UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

TEMPUR SEALY INTERNATIONAL, INC.                    17-cv-2169 (LAK)
SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2019

## MEMORANDUM OPINION

Appearances:

Christopher J. Keller
Jonathan Gardner
Alfred Louis Fatale, III
Christopher Daniel Barraza
Eric David Gottlieb
Francis Paul McConville
Ross Michael Kamhi
LABATON & SUCHAROW LLP

William Scott Holleman
JOHNSON & WEAVER, LLP

*Attorneys for Plaintiffs*

Jordan David Hershman
Jason D. Frank
Jeff Goldman
Emily Renshaw
MORGAN, LEWIS & BOCKIUS LLP

*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge*.

Plaintiffs bring this putative securities class action against Tempur Sealy International,

Inc. ("Tempur Sealy" or the "Company"), its chief executive officer and board chairman, Scott L.

Thompson, and chief financial officer, Barry A. Hytinen. They claim that certain public filings and

statements made by defendants omitted material facts in violation of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5. This matter is before the Court on defendants' motion to dismiss the Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act ("PSLRA"). For the reasons set forth below, defendants' motion is granted.

*Facts*

The facts that follow are those as alleged in the Complaint and the documents referenced therein. The Court accepts them as true for purposes of this motion.[1]

*I.     The Parties*

The plaintiffs are purchasers of publicly traded Tempur Sealy securities between September 9, 2016 and January 27, 2017.[2] The lead plaintiff, Oklahoma Police Pension and Retirement System ("Oklahoma Police"), is a public pension fund that purchased Tempur Sealy common stock during the class period.[3]

Defendant Tempur Sealy is a public company headquartered in Lexington, Kentucky, that manufactures and distributes mattresses and other bedding products.[4] Its stock is traded on the

---

[1]     *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[2]     Consolidated Class Action Complaint [hereinafter "Compl."] [DI 27] at 1.

[3]     *Id.* ¶ 12.

[4]     *Id.* ¶ 13.

New York Stock Exchange ("NYSE").[5]

## II.     Factual Allegations

Tempur Sealy sells its products to retailers, including department stores and warehouse clubs.[6]   In 2015 and 2016, Tempur Sealy's business with retailers accounted for approximately 90 percent of the Company's net sales.[7]   Business with five specific retailers accounted for nearly 40 percent of net sales.[8]  Two of these retailers were Mattress Firm and HMK Mattress Holdings, LLC ("Sleepy's").[9]

During the class period, Tempur Sealy's relationship with Mattress Firm was governed by two sets of contracts between Mattress Firm and two Tempur Sealy subsidiaries: Sealy Mattress Company ("Sealy") and Tempur-Pedic North America, LLC ("Tempur-Pedic").[10]   These contracts were "long-term supply agreement[s]" with Mattress Firm.[11]   In or around early 2016, Tempur Sealy attempted to renegotiate the contracts to incorporate terms more favorable to the

---

[5]
        Id.

[6]
        Id. ¶ 24.

[7]
        Id.

[8]
        Id. ¶ 25.

[9]
        Id. ¶ 26.

[10]
        Id. ¶¶ 27-29.

[11]
        Id. ¶ 30.

Company.[12]

Around this time, on February 5, 2016, Mattress Firm acquired Sleepy's.[13] Following the acquisition, Mattress Firm's market share grew to over 20 percent.[14] Tempur Sealy's sales to the newly combined company grew also to approximately 21 percent of the Company's net sales in 2016.[15]

As a result of the acquisition, Mattress Firm faced challenges integrating and rebranding Sleepy's stores into Mattress Firm stores.[16] This transition temporarily hurt Mattress Firm's business.[17] During this period of transition, Tempur Sealy approached Mattress Firm to renegotiate the existing contracts to secure more favorable terms for itself.[18] According to plaintiffs, the Company took advantage of Mattress Firm's weakened position and bargaining power[19] by threatening to cancel the contracts unless Mattress Firm capitulated to Tempur Sealy's demands.[20]

---

[12]
    *Id.* ¶ 31.

[13]
    *Id.* ¶ 26.

[14]
    *Id.* ¶ 32

[15]
    *Id.* ¶ 26.

[16]
    *Id.* ¶¶ 32, 85.

[17]
    *Id.* ¶ 85.

[18]
    *Id.* ¶ 38.

[19]
    *Id.* ¶¶ 31, 35-37.

[20]
    *Id.* ¶¶ 31, 38, 70.

Plaintiffs claim that this "ultimatum" put Tempur Sealy's relationship with Mattress Firm in "jeopardy."[21]

Later that year, Mattress Firm was acquired by Steinhoff International Holdings N.V. ("Steinhoff"),[22] a vertically integrated German international retail holding company focused on household goods.[23] News of the acquisition broke on August 7, 2016 and it became effective on September 16, 2016.[24]

The acquisition gave Mattress Firm greater bargaining power because its new parent company, Steinhoff, "produce[d] many of [its] own products, particularly mattresses," and could provide "upstream component sourcing" to Mattress Firm, reducing its reliance on traditional suppliers.[25] As a result, the power dynamic between Tempur Sealy and Mattress Firm shifted,[26] and, according to plaintiffs, it became impossible for Tempur Sealy to secure the favorable contract terms it previously had demanded.[27] Plaintiffs claim that this state of affairs materially increased the risk that Tempur Sealy would terminate the contracts with Mattress Firm and that defendants were aware

---

[21] *Id.* ¶ 39.

[22] *Id.*

[23] *Id.* ¶¶ 40-41.

[24] *Id.* ¶¶ 39, 46.

[25] *Id.* ¶¶ 47-48.

[26] *Id.* ¶¶ 47-49.

[27] *Id.* ¶ 60.

of this increased risk.[28]

According to the Complaint, a former employee of Mattress Firm was told in August 2016 of the increased risk that the contracts would be terminated.[29]  The former employee was an inside sales manager who reported to the vice president of multi-channel sales – a manager who met with the Mattress Firm chief executive officer and management weekly.[30]  In August 2016, the vice president allegedly told the former sales manager that the "contract negotiations with Tempur Sealy were not going well and that there was a real threat that the contracts would be cancelled because both parties took hard lines during the negotiations."[31]

Plaintiffs claim that the alleged increased risk of contract termination was discussed within Tempur Sealy as well.[32]  According to a former Tempur Sealy human resources ("HR") manager, in "mid-to-late November 2016," he or she and other HR managers were told on an HR department call "to hold off on hiring until further notice."[33]  The reason for the hiring freeze was uncertainty regarding the Company's negotiations with Mattress Firm.[34]  Additionally, in early

---

[28]

    *See, e.g.*, *id.* ¶ 78.

[29]

    *Id.* ¶ 56.

[30]

    *Id.*

[31]

    *Id.*

[32]

    *Id.* ¶¶ 54-55.

[33]

    *Id.* ¶ 54.

[34]

    *Id.*

December 2016, the vice president of components and synergy projects, Shailesh Patel, and the director of manufacturing operations in Richmond, California, Patricia Gallardo, said – presumably to the former HR manager – that the hiring freeze would continue because negotiations with Mattress Firm "were not going well."[35]

By the beginning of 2017, the negotiations between Tempur Sealy and Mattress Firm had stalled.[36] On January 30, 2017, Tempur Sealy announced in a press release that it had terminated its contracts with Mattress Firm.[37] The press release stated that the Company:

> "announced that during the week of January 23, 2017, senior management of Mattress Firm Holdings Corp. ('Mattress Firm') and representatives of its parent Steinhoff International Holdings N.V. ('Steinhoff'), verbally notified the Company of its intent to terminate all of their contracts with the Company in the United States, if the Company did not agree to considerable changes to their agreements, including significant economic concessions. The Company engaged in discussions to facilitate a mutually agreeable supply arrangement with Mattress Firm. However, the parties were unable to reach an agreement, and the Company issued formal termination notices for all of the Company's brands to Mattress Firm as of January 27, 2017."[38]

Following the announcement, Tempur Sealy's stock price dropped from $63.19 to $43.00 per share, or approximately 32 percent, by the close of trading on January 31, 2017.[39]

---

[35] *Id.* ¶ 55.

[36] *Id.* ¶ 70 ("By the beginning of 2017, the parties reached an impasse.").

[37] *Id.* ¶ 65.

[38] *Id.*

[39] *Id.* ¶ 68.

III.    *The Allegedly False and Misleading Statements*

A.    *September 9, 2016 Registration Statement and September 14, 2016 Prospectus*

On September 9, 2016, Tempur Sealy filed an amendment to a Form S-4 registration statement, which became effective on September 13, 2016, for an exchange of senior notes.[40]  In it – and in a related prospectus filed on September 14, 2016[41] – Tempur Sealy warned of the risks associated with its dependence on sales to its largest customers, including the risks that: (1) "retailers that carry our products may consolidate, undergo restructurings or reorganizations, experience financial difficulty, or realign their affiliations, any of which could decrease the number of stores that carry our products or increase the ownership concentration in the retail industry," (2) profitability is hurt "due to the impact of volume and other incentive programs related to" large customers, (3) the company's credit exposure to the large customers may increase, (4) some retailers "may decide to carry only a limited number of brands of mattress products, which could affect our ability to sell products to them on favorable terms, if at all," (5) the timing of large purchases by large customers could have significant impacts on quarterly net sales and earnings, and (6) a "substantial decrease or interruption in business from these significant customers could result in the loss of future business and could reduce liquidity and profitability."[42]  The Court refers to these statements collectively as the risk disclosure.

In the risk disclosure, Tempur Sealy warned specifically that Mattress Firm was the

---

[40]

    *Id.* ¶ 73.

[41]

    *Id.* ¶¶ 79-80.

[42]

    *Id.* ¶ 74.

Company's "largest customer" and represented "approximately 25% of our overall net sales for 2015."[43]  Plaintiffs claim that the registration statement and prospectus were materially false and misleading because they did not disclose that the Company's relationship with Mattress Firm already had deteriorated following Mattress Firm's acquisition by Steinhoff,[44] and that the risk that Tempur Sealy would terminate its contracts with Mattress Firm given Mattress Firm's increased bargaining power post-acquisition had increased.[45]

B.  *September 27, 2016 Press Release, Form 8-K, and Presentation*

On September 27, 2016, Tempur Sealy issued a press release filed also with the Securities and Exchange Commission ("SEC") on Form 8-K.[46]  The press release stated that third quarter sales were below prior expectations and that the Company expected net sales for the full year to "be down 1 to 3 percent as compared to 2015."[47]  On the same day, defendant Thompson spoke at a Deutsche Bank leveraged finance conference where he addressed the press release and the Company's reduced net sales forecast.[48]  Thompson stated that Tempur Sealy's biggest client,

---

[43]  *Id.*

[44]  *Id.* ¶¶ 75, 81.

[45]  *Id.* ¶¶ 75, 81.

[46]  *Id.* ¶ 82.

[47]  *Id.*

[48]  *Id.* ¶ 84.

Mattress Firm, "recently got purchased" and is "going through some transitions."[49]  Thompson

explained that Tempur Sealy was "feeling some of that transition," but that "[w]e are very optimistic

long term."[50]  When asked specifically about the transitions at Mattress Firm, Thompson replied:

> "[W]e are thrilled with the changes they are making.  We are thrilled with their new ownership and we think that they'll be very successful long term.  But as you may or may not know, they are also rebranding quite a few stores and transitioning from the Sleepy's brand to the Mattress Firm brand.  That means a lot of stuff moving around, and they're going to have to work through that.  And while they are working through that, we are going to feel some of that, but I think they'll get through that very rapidly.  And within a quarter or two, we'll be back on what I'll call a normal basis."[51]

With respect to Mattress Firm's new ownership, Thompson stated:

> "From an ownership standpoint, look, [Steinhoff] people are outstanding owners. They run a decentralized business model, so local management is the same that we've been working with for a decade.  They are fully empowered and we don't see much change from that standpoint."[52]

Plaintiffs claim that the press release and remarks at the Deutsche Bank conference

were materially false and misleading because they did not disclose that the relationship with Mattress

Firm already had deteriorated and that the risk that Tempur Sealy would terminate the contracts had

increased.[53]  Additionally, plaintiffs claim that the statements were misleading because they failed

to disclose the "full extent and long-term implications that the Mattress Firm Acquisition would have

---

[49]    *Id.*

[50]    *Id.*

[51]    *Id.* ¶ 85.

[52]    *Id.* ¶ 86.

[53]    *Id.* ¶¶ 83, 87.

on [Tempur Sealy's] business prospects given the ultimatum it had previously issued to the Mattress Firm."[54]

C.      *October 27, 2016 Press Release, Form 8-K, and Earnings Call*

On October 27, 2016, Tempur Sealy issued another press release, also filed with the SEC on Form 8-K, announcing the Company's third quarter results.[55]  The press release stated that sales were below original expectations but that the Company continued to execute effectively its "core strategy" to drive "long term operating performance."[56]  On the same day, Tempur Sealy held an earnings call to discuss the results released in the press release.[57]  Defendant Thompson there explained that sales had suffered and would continue to do so in the fourth quarter due in part to "significant weakness in our largest national account, which is in the process of rebranding and re-merchandising over 1,000 recently acquired stores."[58]  He stated that he expected sales to improve in 2017 and noted that: (1) Tempur Sealy was "working closely with [Mattress Firm]," (2) he expected "the transition of stores to be very successful," (3) the stores that had transitioned had done well, (4) Tempur Sealy's "sales ha[d] increased from a balance of share stand point," (5) Tempur Sealy works with Steinhoff "worldwide" and finds it "to be outstanding," and (6) the Company is

---

[54]

     *Id.* ¶¶ 83, 87.

[55]

     *Id.* ¶ 88.

[56]

     *Id.*

[57]

     *Id.* ¶ 89.

[58]

     *Id.*

"wildly optimistic about the future for both the Mattress Firm team and Tempur Sealy."[59]

Plaintiffs claim that the press release and statements made on the earnings call were materially false and misleading because they failed to disclose that the relationship with Mattress Firm already had deteriorated and that the risk that Tempur Sealy would terminate the contracts had increased.[60]

D.    *November 4, 2016 Form 10-Q*

On November 4, 2016, Tempur Sealy reported its third quarter financial results on the Form 10-Q filed with the SEC.[61]  The 10-Q incorporated the financial results announced in the October 27, 2016 press release and indicated that the decline in sales to Mattress Firm in the third quarter of 2016 was expected to continue into the fourth quarter of 2016.[62]  The 10-Q included also the risk disclosure concerning the Company's largest customers described above and an update to that disclosure regarding the Mattress Firm transition.[63]  Plaintiffs claim that the 10-Q was materially false and misleading because it failed to disclose that the relationship with Mattress Firm had deteriorated and that the risk of contract termination had increased.[64]

---

[59]

    *Id.* ¶¶ 90-91.

[60]

    *Id.* ¶ 92.

[61]

    *Id.* ¶ 93.

[62]

    *Id.* ¶¶ 93-94.

[63]

    *Id.* ¶ 97.

[64]

    *Id.* ¶ 98.

*IV.    The Present Action*

The plaintiffs filed this action on August 7, 2017. The Complaint alleges that Tempur Sealy, Thompson, and Hytinen violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by failing to disclose that Tempur Sealy's relationship with Mattress Firm had deteriorated in or around August 2016 on the heels of Steinhoff's acquisition of Mattress Firm. Plaintiffs claim that defendants failed to disclose also that the risk that Tempur Sealy would terminate its contracts with Mattress Firm had increased in or around the same time. The Complaint alleges violations of Items 303 and 503 of SEC Regulation S–K and control person liability under Section 20(a) of the Exchange Act as well.[65]

Defendants move to dismiss on the grounds that plaintiffs have failed to plead their allegations with sufficient particularity, and to plead adequately any material misstatement or omission, *scienter*, and loss causation.

*Discussion*

*I.    Motion to Dismiss Standard*

To survive a motion to dismiss, a complaint must allege sufficient factual matter "to state a claim to relief that is plausible on its face."[66]   The Court reviews a motion to dismiss "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in

---

[65]    *Id.* ¶ 133.

[66]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

the plaintiffs' favor."[67] The Court is not obliged to accept as true legal conclusions.[68] Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice" to defeat a motion to dismiss.[69] In a securities case, the Court may consider also "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[70]

A complaint that pleads securities fraud must satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA.[71] Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud."[72] To satisfy the rule, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[73] The PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission

---

[67] *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[68] *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[69] *Id.* (*quoting Iqbal*, 556 U.S. at 678).

[70] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[71] *Id.* at 99.

[72] FED. R. CIV. P. 9(b).

[73] *ATSI*, 493 F.3d at 99.

is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[74]

## II.    *Section 10(b) and Rule 10b-5 Claims*

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."[75]   Rule 10b-5 implements that statute.  It prohibits individuals and entities from making "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."[76]

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[77]   Defendants move to dismiss the Section 10(b) and Rule 10b-5 claims on the grounds that plaintiffs have failed to plead them with particularity under Rule 9(b) and the PSLRA, and failed adequately to plead a material

---

[74]    15 U.S.C. § 78u–4(b)(1).

[75]    15 U.S.C. § 78j(b).

[76]    17 C.F.R. § 240.10b-5(b).

[77]    *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (internal quotations and citations omitted).

misrepresentation or omission, *scienter*, and loss causation.  The Court addresses each in turn.

　　*A.*　　*Particularity*

　　　　Under Rule 9(b) and the PSLRA, a plaintiff must identify with particularity the statement or statements alleged to be false or misleading and the reason or reasons why that is so.[78] When a plaintiff alleges that a statement is false or misleading based on information and belief, the plaintiff must state facts sufficient to support that belief.[79]  The plaintiff may do so by identifying documentary evidence that supports the belief or by providing a "sufficient general description of the personal sources" of the belief.[80]  Conclusory or unsupported allegations are insufficient.[81]

　　　　The plaintiffs here allege four instances in which Tempur Sealy made false or misleading statements: (1) the September 2016 registration statement and prospectus, (2) the September 27, 2016 press release, Form 8-K, and presentation, (3) the October 27, 2016 press release, Form 8-K, and earnings call, and (4) the November 4, 2016 Form 10-Q.

---

[78]　*See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) ("A complaint . . . must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotations and citations omitted)); *Rombach*, 355 F.3d at 172.

[79]　*Novak*, 216 F.3d at 312; *see also* 15 U.S.C. § 78u-4(b)(1).

[80]　*Novak*, 216 F.3d at 314.

[81]　*ATSI*, 493 F.3d at 99.

i.      *September 9, 2016 Registration Statement and September 14, 2016 Prospectus*

The registration statement and prospectus filed in September 2016 contained risk disclosures related to Tempur Sealy's largest customers in general and Mattress Firm in particular. Plaintiffs allege that these risk disclosure statements were false and misleading because they omitted two facts plaintiffs claim to have been true.

The first is that Tempur Sealy's relationship with Mattress Firm "had in fact *already* deteriorated" by September 2016.[82]  The second is that the risk that Tempur Sealy would terminate its contracts with Mattress Firm had increased following Mattress Firm's acquisition by Steinhoff in August 2016 and the stronger bargaining position it enjoyed as a result.  Plaintiffs claim that these facts were true based on confidential witness statements[83] and statements made in a lawsuit Mattress Firm filed against Tempur Sealy in March 2017.[84]

Allegations based on statements of confidential witnesses may be credited on a motion to dismiss where they are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."[85]  In addition, if credited, the witness statements relied upon must support the assertions

---

[82]     Compl. [DI 27] ¶ 75 (emphasis in original).

[83]     *Id.* ¶¶ 54-56.

[84]     *Id.* ¶¶ 31, 39, 50.

[85]     *Novak*, 216 F.3d at 314.

based upon them.[86]

The first alleged confidential witness is a former Tempur Sealy HR manager. The former HR manager allegedly was told in mid-to-late November 2016 on an HR department call that there would be a hiring freeze because there were "uncertainties" in the Mattress Firm contract negotiations.[87] In December 2016, the former HR manager allegedly received an instruction from Tempur Sealy management to continue the hiring freeze because "Mattress Firm negotiations were not going well."[88] If the Court were to credit the statements of this witness, they nevertheless would be unable to support the allegations that the Mattress Firm relationship already had deteriorated and that the risk that Tempur Sealy would terminate the contracts had increased by September 2016. This is so because the statements were made later in time and say nothing of the state of negotiations or Mattress Firm relationship during September 2016 or, for that matter, October and early November 2016.

The second alleged confidential witness is a former Mattress Firm sales manager who reportedly said that he was told by his manager in August 2016 that contract negotiations with Tempur Sealy were not going well and that "there was a real threat that the contracts would be cancelled because both parties took hard lines during the negotiations."[89] These statements, if

---

[86]

*In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at *6 (S.D.N.Y. May 11, 2016).

[87]

Compl. [DI 27] ¶ 54.

[88]

*Id.* ¶ 55.

[89]

*Id.* ¶ 56.

According to the Complaint, the manager was the "Vice President of Multi-Channel Sales,

credited, likewise cannot support the allegations that the relationship with Mattress Firm had deteriorated and that the risk that Tempur Sealy would cancel the contracts had increased by September 2016. First, the fact that negotiations may not succeed is not equivalent to the first fact alleged – that the relationship already had deteriorated. Second, even if there was a "real threat that the contracts would be canceled" by September 2016, that fact does not speak to the level of risk in, for example, May or June of 2016, or earlier that year. Thus, there is no basis for the allegation that the risk had *increased* by September 2016.

The lawsuit filings referenced in the Complaint state that in early 2016, Tempur Sealy sought to "capitalize on Mattress Firm's efforts to grow as a company" and threatened to cancel its contracts with Mattress Firm if it did not agree to terms that were "increasingly favorable to Tempur Sealy."[90] The Complaint characterizes this threat as an "ultimatum."[91] But the characterization adds nothing. And the fact actually alleged, absent plaintiffs' argumentative characterization, lends no support to plaintiffs' claims that the Mattress Firm relationship had deteriorated and that the risk of contract termination had increased by September 2016. It describes only a single negotiating tactic employed in early 2016. Plaintiffs do not allege its effect, if any, on the contract negotiations, and provide no facts regarding the state of the relationship or contract negotiations between the time the "threat" was issued in early 2016 and the period at issue, September 2016. It is unclear also whether the contract negotiations that occurred in early 2016 are the same as those that occurred in September

who . . . reported to Mattress Firm's CEO" and "met with the CEO and management on a weekly basis." *Id.*

[90] *Id.* ¶ 31.

[91] *Id.*

2016 or whether the parties successfully renegotiated the contracts sometime prior to September 2016 and then failed to do so again in early 2017.

Additionally, the plaintiffs do not provide enough detail regarding the context of these statements to allow the Court to credit them. The Complaint indicates that the statements are drawn from the "original petition" filed in the Mattress Firm lawsuit but nothing more.[92] If the petition relied on confidential witness statements, then plaintiffs have failed to identify the speaker with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."[93] Alternatively, if the petition relied on a document or an identified witness, then plaintiffs have failed to provide a sufficient general description of that document or witness to the Court. Thus, they have failed to state facts that support their assertions that the relationship between Tempur Sealy and Mattress Firm already had deteriorated and that the risk that Tempur Sealy would terminate the contracts had increased by September 2016.

ii.      *September 27, 2016 Press Release, Form 8-K, and Presentation*

On September 27, 2016, Tempur Sealy issued a press release that indicated that third quarter sales had fallen below the Company's prior expectations, and projected that sales for the full year would be down compared to the prior year.[94] On the same day, defendant Thompson spoke at a Deutsche Bank conference where he explained that the lower forecast was due in part to Mattress

---

[92]    *Id.* ¶ 70.

[93]    *Novak*, 216 F.3d at 314.

[94]    Compl. [DI 27] ¶ 82.

Firm's acquisition of Sleepy's, which was affecting Tempur Sealy's business.[95]  Defendant Thompson said that he expected any negative effects from the Mattress Firm transition to last no more than a quarter or two and that little would change with respect to the Company's interactions with Mattress Firm management as a result of the Steinhoff acquisition.[96]  Plaintiffs allege that the press release and Deutsche Bank conference statements were false and misleading because they omitted the same two facts discussed above that plaintiffs claim to have been true, and "failed to disclose the full extent and long-term implications the Mattress Firm Acquisition would have on its business prospects given the ultimatum it had previously issued to the Mattress Firm."[97]

Plaintiffs' claims that the relationship with Mattress Firm already had deteriorated and that the risk that the Company would terminate the contracts had increased by September 2016 are not supported by sufficient facts for the reasons stated above.  With respect to the long-term implications of the Mattress Firm acquisition by Steinhoff, plaintiffs do not plead what exactly these implications were, are, or will be.  Nor do they plead that defendants knew or had a reasonable basis to know the full extent and long-term implications of the acquisition.  Plaintiffs simply assert that defendants would have known these things – presumably via clairvoyance and a secret window into the corporate thinking and workings of Mattress Firm – and disclosed them.  Assuming, as the Court

---

[95]     *Id.* ¶¶ 84-85.

[96]     *Id.* ¶¶ 85-86.

[97]     *Id.* ¶¶ 83, 87.

does, that defendants had neither,[98] plaintiffs have failed to plead with particularity why the statements were false and misleading absent disclosure of largely unidentified and likely unknowable facts.

        *iii.     October 27, 2016 Press Release, Form 8-K, and Earnings Call*

      On October 27, 2016, Tempur Sealy issued a press release announcing that its 2016 Q3 results were "below our original expectations."[99]  On the same day, defendant Thompson spoke on an earnings call where he explained that the shortfall was related to Mattress Firm's acquisition of Sleepy's and rebranding of stores.[100]  He said that he expected things to improve in 2017[101] based on the fact that stores Mattress Firm had finished rebranding had "done well" and that Tempur Sealy's sales had "increased from a balance of share stand point."[102]  Thompson added that Tempur Sealy has a high opinion of Steinhoff, Mattress Firm's owners.[103]

---

[98]

        *See Novak*, 216 F.3d at 309 (stating that the Second Circuit has "refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight'" (*quoting Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999))); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 228-29 (S.D.N.Y. 2008) (indicating that a plaintiff cannot satisfy the requirement that he or she plead false or misleading statements with particularity if the complaint pleads "fraud by hindsight").

[99]

        Compl. [DI 27] ¶ 88.

[100]

        *Id.* ¶ 89.

[101]

        *Id.*

[102]

        *Id.* ¶ 90.

[103]

        *Id.* ¶¶ 90-91.

Plaintiffs allege that Thompson's statements on the earnings call and those in the press release were false or misleading because of their claims that Tempur Sealy's relationship with Mattress Firm already had deteriorated by October 2016 and that the Company "concealed" the increased risk that it would terminate its contracts with Mattress Firm.[104]  The plaintiffs have failed to plead facts sufficient to support these claims for the reasons stated above.

        *iv.*       *November 4, 2016 Form 10-Q*

On November 4, 2016, Tempur Sealy reported its 2016 Q3 financial results on the Form 10-Q.[105]  The Company reported that sales to Mattress Firm had declined in the third quarter of 2016, and that it expected those sales to decline also in the fourth quarter as compared to 2015 Q4.[106]  Additionally, the Company provided an updated risk disclosure that discussed the effect of the Sleepy's acquisition on Mattress Firm and on Tempur Sealy sales, and referred to previously described risks associated with the Company's largest customers.[107]

Plaintiffs allege that the statements in the Form 10-Q were false or misleading because they omitted the same two alleged facts previously discussed that plaintiffs claim to have been true.[108]  For the reasons stated above, plaintiffs fail to plead facts sufficient to support these claims.

---

[104]     *Id.* ¶ 92.

[105]     *Id.* ¶ 93.

[106]     *Id.* ¶ 94.

[107]     *Id.* ¶ 97.

[108]     *Id.* ¶ 98.

Accordingly, plaintiffs have failed to satisfy the heightened pleading requirements under Rule 9(b) and the PSLRA.

B.      *Material Misrepresentations and Omissions*

The plaintiffs allege that certain of defendants' statements were false or misleading "for what [they] did not say."[109]

"An omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."[110]  A duty to disclose arises in three circumstances: when (1) a corporate insider trades on confidential information, (2) a statute or regulation requires disclosure, and (3) a corporate statement otherwise would be inaccurate, incomplete, or misleading.[111]  Plaintiffs allege that the second and third circumstances are implicated here.  With respect to the third, some of the statements that plaintiffs allege are misleading are statements of belief or opinion.  These types of statements are subject to a separate analysis distinct from that applied to allegedly misleading statements of pure fact.[112]

A plaintiff who alleges that a statement of belief or opinion was misleading must

---

[109]

Pl. Mem. [DI 41] at 20 ("[T]he Complaint makes clear that Defendants' statements, when read in proper context, were false and misleading for failing to disclose material information – *i.e.*, they were false for what those statements did not say and the impression they made.").

[110]

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).

[111]

*Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).

[112]

*See City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 68-70 (S.D.N.Y. 2015).

plead facts that, if true, would be sufficient to show one of two things: (1) that the speaker "did not actually hold the stated belief,"[113] or (2) in circumstances where the statement is "reasonably understood to rest on a factual basis that justifies it as accurate," there are facts that "call into question the [defendant's] basis for offering the opinion."[114]  A plaintiff, however, cannot make out a claim based on "expressions of puffery and corporate optimism."[115]  "Up to a point, companies must be permitted to operate with a hopeful outlook," and the people in charge "are not required to take a gloomy, fearful or defeatist view of the future."[116]

Additionally, a plaintiff must allege adequately that an omitted fact is material.  At the pleading stage, "a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a[n] . . . omission that a reasonable investor would have considered significant in making investment decisions."[117]  "There must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of

---

[113]

Id. at 69 (internal quotations omitted).

[114]

Id. at 70; see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318, 1332 (2015) ("The [plaintiff] must identify particular (and material) facts going to the basis for the [defendant's] opinion – facts about the inquiry the [defendant] did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.").

[115]

Rombach,  355 F.3d at 174.

[116]

Id. (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129-30 (2d Cir. 1994)).

[117]

Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).

information made available."[118]  But it is not necessary "to assert that the investor would have acted differently if an accurate disclosure was made."[119]

Plaintiffs allege that defendants made false or misleading statements due to material omissions on four occasions from September 2016 through November 2016.

i.    *September 9, 2016 Registration Statement and September 14, 2016 Prospectus*

The registration statement and prospectus filed in September 2016 contained risk disclosures related to Tempur Sealy's largest customers and Mattress Firm specifically.  The two documents noted that a "substantial decrease or interruption in business" from any of the large customers "could reduce liquidity and profitability."[120]  According to plaintiffs, the registration statement and prospectus were materially false and misleading because they omitted the same two alleged facts concerning Mattress Firm, which they contend were material.[121]  Those facts are that: (1) the relationship with Mattress Firm already had deteriorated by September 2016, and (2) there was an increased risk that Tempur Sealy would terminate its contracts with Mattress Firm following its acquisition by Steinhoff.  Plaintiffs claim that Tempur Sealy had a duty to disclose these facts under Items 303 and 503 of Regulation S-K, and Section 10(b).

---

[118]

Id. at 162 (*quoting Basic v. Levinson*, 485 U.S. 224,  231-32 (1988)).

[119]

*Ganino*, 228 F.3d at 162.

[120]

Compl. [DI 27] ¶ 74.

[121]

The Court construes this claim as limited to those statements concerning risk disclosure.

## a. Item 303 Claims

Item 303 requires a company to make certain disclosures regarding its financial condition.[122] These include a description of "any known trends or uncertainties that have had or that the [company] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."[123] Disclosure is necessary "where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the [company's] financial condition or results of operation."[124]

---

[122]

17 C.F.R. § 229.303.

These disclosures must be made in the annual and quarterly reports – Forms 10-K and 10-Q, respectively – that certain companies including Tempur Sealy are required to file with the SEC. Tempur Sealy incorporated by reference its Form 10-K for the fiscal year ending December 31, 2015 and Forms 10-Q for quarters ending March 31, 2016 and June 30, 2016 into its September 2016 registration statement and prospectus. *See* Tempur Sealy Int'l Inc., Amendment No. 1 to Form S-4 Registration Statement under the Securities Act of 1933 (Sept. 9, 2016). The statements that plaintiffs allege are materially misleading are contained in the Tempur Sealy Form 10-K for the fiscal year ending December 31, 2015 that was filed with the SEC on February 12, 2016.

[123]

17 C.F.R. § 229.303(a)(3)(ii).

Plaintiffs' brief potentially suggests that their Item 303 claims are based in part on subsection (a)(3)(i), which addresses unusual or infrequent events. Pl. Mem. [DI 41] at 15 (explaining that Item 303 requires a company to disclose "*events . . . reasonably likely to have material effects on the company's financial condition*" (emphasis added)). The events referred to in that subsection, however, include only those that "materially *affected* the amount of *reported* income from continuing operations." 17 C.F.R. § 229.303(a)(3)(1) (emphasis added). As plaintiffs do not claim any failure to disclose information concerning events that had affected Tempur Sealy's financial results reported prior to September 2016, the Court considers only subsection (a)(3)(ii) for purposes of these claims.

[124]

Management's Discussion and Analysis of Financial Condition and Results of Operations, Securities Act Release No. 6835, 43 SEC Docket 1330 (May 18, 1989).

Plaintiffs allege two trends or uncertainties that defendants were obliged to disclose under Item 303: the deterioration of the Mattress Firm relationship and the increasing risk of contract termination by September 2016. These allegations are based on the confidential witness statements and statements allegedly made in the 2017 Mattress Firm lawsuit. But the preceding analysis regarding the sufficiency of these alleged statements to support plaintiffs' allegations applies here as well. For the same reasons plaintiffs have failed to plead with particularity the reason or reasons why the registration statement and prospectus were fraudulent, they have failed to plead the existence of a trend or uncertainty within the meaning of Item 303.

Moreover, even if plaintiffs adequately had pleaded facts supporting the two alleged trends and that they were known to management, their claims still would fail because they have not pleaded any facts demonstrating that defendants reasonably could have expected *those specific trends* to affect Tempur Sealy's sales, revenue, or income distinct from the way in which a disclosed trend or uncertainty was expected to affect the same. For example, one reasonably could expect the termination of a contract that was at risk of being terminated to have a measurable effect on sales, revenue, or income. Prior to termination, however, any increase in that risk would not in turn increase or change the expected effect of termination. In this scenario, absent knowledge that contract termination was indeed probable or imminent, the defendants cannot be held liable under Item 303 for the alleged omissions.[125]

---

[125]

*Susie Ong v. Chipotle Mexican Grill, Inc.*, No. 16-cv-141 (KPF), 2017 WL 933108, at *17 (S.D.N.Y. Mar. 8, 2017) ("Item 303 requires the disclosure of harm that is 'probable,' 'imminent,' and 'not merely potential.'"); *cf. Rombach*, 355 F.3d at 173 (stating that the bespeaks caution doctrine will not protect an individual "who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away").

b.    *Item 503 Claims*

Item 503 requires offering documents to describe "under the caption 'Risk Factors' . . . the most significant factors that make the offering speculative or risky."[126]  A "court's inquiry with regard to Item 503 boil[s] down . . . to whether the Offering Documents were accurate and sufficiently candid."[127]

Plaintiffs have failed to plead the omission of one or more of "the most significant factors" that made the offering "speculative or risky" under Item 503 for the same reasons they have failed to plead the existence of a trend known to management within the meaning of Item 303.[128]

c.    *Claims that the Registration Statement and Prospectus were Inaccurate, Incomplete, or Misleading*

Plaintiffs claim that defendants had a duty to disclose the alleged omitted facts under Section 10(b) because omission of those facts rendered defendants' statements incomplete, inaccurate, or misleading.  According to plaintiffs, "because Defendants touted Tempur Sealy's relationship with Mattress Firm as important to the Company's financial success and informed investors of the long-term supply agreements the Company had with Mattress Firm, investors were

---

[126]

17 C.F.R. § 229.503(c).

[127]

*Ong*, 2017 WL 933108, at *17 (internal quotations and citations omitted).

[128]

*Cf. In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 154 (S.D.N.Y. 2015) (concluding where a plaintiff's Item 303 claims fell short of materiality, and the plaintiff's "arguments under Item 503 are derivative of its Item 303 claims," plaintiff failed to plead adequately that the "omissions in question are 'the most significant factors' that made the offering 'speculative or risky' under Item 503").

misleadingly assured that they could count on future sales to Mattress Firm."[129]  Thus, plaintiffs claim, defendants failed to "disclose the full truth about the relationship with Mattress Firm" in the risk disclosure statements.[130]

Where, as here, there is no insider trading or affirmative disclosure obligations, silence alone "is not misleading under Rule 10b-5."[131]  Disclosure is required only when necessary to make statements contemporaneously or previously made not misleading.[132]  This requirement, however, does not mandate disclosure of all facts that "would be interesting" in light of and in relation to a disclosed fact.[133]  Nor does it automatically render statements of fact on a certain topic misleading due to the omission of another fact concerning the same topic.[134]

While the alleged omitted facts – that the relationship with Mattress Firm had deteriorated and that the risk that Tempur Sealy would terminate the contracts had increased by September 2016 – if true, would be interesting to an investor, they are not facts that Tempur Sealy was obliged to disclose.  As discussed above in relation to the Item 303 claims, plaintiffs have failed to plead sufficiently the very *existence* of the alleged omitted facts.  Accordingly, their omission

---

[129]

Pl. Mem. [DI 41] at 12 (internal citations and quotations omitted).

[130]

*Id.* at 11.

[131]

*In re Rockwell Medical, Inc. Sec. Litig.*, No. 16-cv-1691 (RJS), 2018 WL 1725553, at *6-7 (S.D.N.Y. Mar. 30, 2018) (*quoting Basic*, 485 U.S. at 240).

[132]

*Id.* at *10.

[133]

*Id.* (*quoting In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008)).

[134]

*In re Rockwell Medical*, 2018 WL 1725553, at *10-11.

cannot render any statement misleading or actionable under Section 10(b). Moreover, even if the

alleged omitted facts were true, defendants had no duty to disclose them. Based on the pleadings,

the Court finds that Tempur Sealy had remained silent as to the negotiations and current state of the

relationship between Tempur Sealy and Mattress Firm, and silence is not misleading under Rule 10b-

5.[135]

ii.      *September 27, 2016 Press Release, Form 8-K, and Presentation*

The September 27, 2016 press release indicated that third quarter sales had fallen

below the Company's prior expectations and projected that sales for the full year would be down

compared to the prior year. At the September 27, 2016 Deutsche Bank conference, defendant

Thompson stated that the Company had lowered its forecast in part because of the Mattress Firm

acquisition. Thompson explained that Mattress Firm was "going through some transitions,"

including rebranding stores, that would affect Tempur Sealy's business.[136] He expressed optimism

that any negative effects from the transition would last no more than a quarter or two and that little

would change with respect to Tempur Sealy's interactions with Mattress Firm management because

of Steinhoff's "decentralized business model" that left "local [Mattress Firm] management" in

---

[135]

        Plaintiffs argue that the Company was not silent with respect to its relationship with
Mattress Firm because it "spoke[] about [that] relationship . . . throughout the Class
Period," disclosed "the long-term supply agreements the Company had with Mattress
Firm," and "touted Tempur Sealy's relationship with Mattress Firm as important to the
Company's financial success." Pl. Mem. [DI 41] at 12. Plaintiffs, however, have failed to
point to a single prior statement or statement in the registration statement or prospectus that
addresses the state of ongoing contract negotiations or describes the relationship in
qualitative rather then numerical terms.

[136]

        Compl. [DI 27] ¶ 84.

place.[137]

According to plaintiffs, the press release and defendant Thompson's remarks were materially false and misleading because they failed to disclose: (1) that the relationship with Mattress Firm already had deteriorated by September 2016, (2) that there was an increased risk that Tempur Sealy would terminate its contracts with Mattress Firm following its acquisition by Steinhoff, and (3) the full extent and long-term implications of the Mattress Firm acquisition on Tempur Sealy's business in light of Tempur Sealy's earlier threat to terminate the contracts. Plaintiffs claim that defendants had a duty to disclose these alleged facts under Section 10(b) to ensure that defendants' statements were not inaccurate, incomplete, or misleading.

As an initial matter, there is "no duty to disclose predictions that are not substantially certain to hold."[138] Plaintiffs' claim regrading the third alleged omission therefore fails because it essentially asserts that defendants did not opine on what could not have been known with any certainty. That leaves the first and second alleged omissions.

As discussed in the prior section and in relation to the Item 303 claims, plaintiffs have failed to plead sufficiently the very *existence* of the alleged omitted facts. Plaintiffs' allegations that the press release and conference remarks were materially false and misleading therefore are unsupported, conclusory, and insufficient to survive this motion. And even if the alleged omitted facts were supported by an adequate factual basis, there are at least several reasons plaintiffs' claims still would fail.

---

137

    *Id.* at ¶¶ 85-86.

138

    *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (*quoting In re Ford Motor Co. Sec. Litig.*, 184 F. Supp. 2d 626, 633 (E.D. Mich. 2001)).

First, defendants had no duty to disclose the two alleged omitted facts in the press release because the portion that plaintiffs quote in the Complaint is silent on the Company's relationship with Mattress Firm and state of negotiations. The Company therefore did not break its silence here and thus subject itself to a duty to disclose under Section 10(b).

Second, defendant Thompson's statements, to the extent that they were not silent on the Mattress Firm relationship and negotiations, cannot give rise to liability because they consist of: (1) expressions of optimism and excitement that are mere corporate puffery and "too general to cause a reasonable investor to rely upon them,"[139] and (2) statements of opinion that plaintiffs have not sufficiently alleged were disbelieved by the defendant[140] or to have rested on a questionable basis.[141] Plaintiffs cannot challenge the basis of Thompson's statements by pointing to the same two alleged facts of which he supposedly was aware because, as the Court has reiterated throughout this opinion, there is insufficient support for those two factual allegations.

  iii.  *October 27, 2016 Press Release, Form 8-K, and Earnings Call*

The October 27, 2016 press release announced the Company's 2016 Q3 financial

---

[139]

  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009); *see also Rombach*, 355 F.3d at 174; *Rudman v. CHC Group LTD.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) ("[Defendant's] statements regrading its 'strong' relationships with [one of its top customers] was no more than 'puffery' which does not give rise to securities violations." (internal quotations omitted)).

[140]

  *See City of Westland*, 129 F. Supp. 3d at 69.

[141]

  *See id.* at 71 (explaining that certain statements of opinion in certain contexts "could be misleadingly incomplete" if they "are not grounded in the customs and practices of the relevant industry").

results and reported sales "below our original expectations."[142]  On the October 27, 2016 earnings call, Thompson stated that the sales shortfall was due in part to "significant weakness in our largest national account," that likely would continue to "impact our sales for the remainder of 2016, before improving in 2017."[143]  Thompson explained that his optimism that sales would improve in 2017 was due to the fact that rebranded Mattress Firm stores had "done well" and Tempur Sealy's sales had "increased from a balance of share stand point."[144]  Thompson added that Tempur Sealy has a high opinion of Steinhoff, Mattress Firm's owners, and that the Company is working and will continue to work closely with Mattress Firm.[145]

Plaintiffs allege that these statements were materially false and misleading because they failed to disclose the alleged deterioration in the Mattress Firm relationship and the increased risk of contract termination.  With two exceptions, the October statements largely mirrored the September press release and Deutsche Bank conference statements and are subject to the same analysis that does not warrant repetition here.  The exceptions are the statements that: (1) Tempur Sealy is working and will continue to work closely with Mattress Firm,[146] and (2) stores Mattress Firm has rebranded "have done well [and] Tempur Sealy's sales have increased from a balance of

---

[142]

Compl. [DI 27] ¶ 88.

[143]

*Id.* ¶ 89.

[144]

*Id.* ¶ 90.

[145]

*Id.* ¶¶ 90-91.

[146]

*Id.* ¶ 91.

share stand point."[147]  The former is not actionable because plaintiffs have not alleged a sufficient factual basis for their assertion that the relationship had deteriorated or that the risk of contract termination had increased by October 2016.[148]  As a result, there is no basis for the allegation that the statement is misleading.  Likewise, the latter is not actionable because plaintiffs have failed to allege facts supporting the conclusory allegations of falsity or inaccuracy.

        iv.        *November 4, 2016 Form 10-Q*

The Form 10-Q filed November 4, 2016 reported Tempur Sealy's 2016 Q3 financial results.  It indicated that sales to Mattress Firm had declined in the third quarter of 2016[149] and that the Company expected those sales to decline also in the fourth quarter as compared to 2015 Q4.[150]  In the 10-Q, the Company provided an updated risk disclosure that discussed the effect of the Sleepy's acquisition on Mattress Firm and on Tempur Sealy sales, and referred to previously described risks associated with the Company's largest customers.[151]

Plaintiffs allege that the statements in the 10-Q were materially false and misleading because they failed to disclose the allegedly deteriorated Mattress Firm relationship and allegedly increased risk of contract termination.  Plaintiffs claim that defendants were obligated to disclose

---

[147]

    *Id.* ¶ 90.

[148]

    *See supra* Part II.A.

[149]

    Compl. [DI 27] ¶ 94.

[150]

    *Id.*

[151]

    *Id.* ¶ 97.

these alleged facts under Items 303, 503, and Section 10(b). For many of the reasons previously stated, defendants had no obligation to disclose these alleged omitted facts under Items 303 and 503, or Section 10(b).

The Court concludes that plaintiffs have failed to plead a material misstatement or omission.

C.    *Scienter*

The PSLRA requires plaintiffs to state with particularity "facts evidencing scienter, *i.e.*, the defendant's intention to 'deceive, manipulate, or defraud.'"[152] When deciding a motion to dismiss, a court must determine whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter."[153] The inquiry is not "whether any individual allegation, scrutinized in isolation, meets that standard."[154] A plaintiff adequately alleges *scienter* only if the inference of *scienter* is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[155] While the Court accepts as true all factual allegations for purposes of a Rule 12(b)(6) motion, conclusory allegations of fraudulent intent will not suffice to establish *scienter*.[156]

---

[152]

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[153]

*Id.* at 322-23 (emphasis in original).

[154]

*Id.* at 323.

[155]

*Id.* at 324.

[156]

*Rombach*, 355 F.3d at 176 ("[A] pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent." (internal quotations and citations

A plaintiff may plead *scienter* adequately by alleging facts that demonstrate either: "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."[157]  To allege *scienter* through motive and opportunity, the plaintiff must show that defendants "benefitted in some concrete and personal way from the purported fraud."[158]  This typically is done by alleging that corporate insiders made material misrepresentations in order to profit from the sale of their own shares.[159]  A general desire that the corporation appear profitable is not enough.[160]

If a plaintiff is unable to plead motive and opportunity, the plaintiff may allege *scienter* through strong circumstantial evidence of conscious misbehavior or recklessness, though such allegations must be "correspondingly greater."[161]  Conscious misbehavior or recklessness involves deliberate, illegal behavior, or highly unreasonable conduct that "constituted an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[162]  If, for example, a defendant had facts at his or her disposal contradicting material public statements and the defendant

----

omitted)).

[157]  *ECA, Local 134*, 553 F.3d at 198.

[158]  *Id.*

[159]  *Id.* (*citing Novak*, 216 F.3d at 308).

[160]  *ECA, Local 134*, 553 F.3d at 198.

[161]  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 573 (S.D.N.Y. 2014).

[162]  *Id.*

ignored those facts, that could constitute recklessness. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."[163] "An allegation that a defendant merely ought to have known is not sufficient to allege recklessness."[164]

Plaintiffs contend that defendants knew or recklessly disregarded facts that contradicted their public statements about Tempur Sealy's relationship with Mattress Firm. According to the Complaint, defendants were heavily involved in the negotiations with Mattress Firm. They knew the tactics employed and allegedly knew the risks these tactics supposedly created, and the "impact [these tactics] would have on the contract negotiations once Mattress Firm was acquired and had a stronger bargaining position."[165] Plaintiffs rely also on the confidential witness statements to support their allegations that defendants acted with the requisite state of mind.

Plaintiffs have failed to allege *scienter* substantially for the same reasons they have failed to plead with particularity the reason or reasons why the alleged misstatements were fraudulent, and for the reasons stated in defendants' brief.[166]

---

[163]

*Id.* at 574 (*quoting Novak*, 216 F.3d at 309).

[164]

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 574 (*quoting Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012)).

[165]

Pl. Mem. [DI 41] at 26.

[166]

*See* Def. Mem. [DI 33] at 15-21.

D.      *Loss Causation*

To plead loss causation adequately, a plaintiff must allege facts that, if true, would show that the alleged "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."[167]  Plaintiffs have failed to do so.

Plaintiffs here allege that the stock price dropped from $63.19 to $43.00  per share by January 31, 2017 after the Company disclosed that it would terminate its contracts with Mattress Firm.[168]  Thus, plaintiffs allege only that the stock price dropped when a disclosed risk – namely, that circumstances could arise leading to the termination of Tempur Sealy's relationship with any of its largest customers[169] – materialized.  They have failed to allege that any part of the price drop was due specifically to the disclosure of the facts allegedly concealed from the market.  Moreover, plaintiffs do not assert that these alleged facts ever were disclosed to the market.  Accordingly, plaintiffs have failed adequately to plead loss causation.

---

167

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).

168

Compl. [DI 27] ¶ 68.

Contrary to plaintiffs' assertion in their brief, the Complaint does not plead loss causation in relation to an earlier event: the decline in stock price from September 28-29, 2016 following news that the Company was lowering its forecast for 2016.  Rather, the Complaint states: "[o]n news of the guidance revision, the price of Tempur Sealy's common stock fell $19.21 per share over a two-day period, or more than 25%, on heavy trading volume, to close at $55.24 per share on September 29, 2016.  *Had the truth been revealed*, the stock price would have fallen even further."  Compl. [DI 27] ¶ 61 (emphasis added).  Thus, plaintiffs explicitly plead the opposite here, asserting that the alleged omissions remained "concealed" from the market at this time.

169

*See id.* ¶ 74.

*III.    Section 20(a) Claims*

Section 20(a) imposes joint and several liability on control persons for underlying violations of the Exchange Act.[170]  To state a claim under Section 20(a), a plaintiff must allege both a primary violation of the Exchange Act and the defendant's control over the primary violator.[171]  Because plaintiffs have failed to allege a primary violation of the Exchange Act, their claims under Section 20(a) are dismissed.[172]

*Conclusion*

For the foregoing reasons, the Court grants defendants' motion to dismiss in its entirety.  The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:        March 26, 2019

_____
                    Lewis A. Kaplan.
                    United States District Judge

---

[170]        *See* 15 U.S.C. § 78t.

[171]        *City of Westland*, 129 F. Supp. 3d at 87.

[172]        *See id.*